UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE,

        Plaintiff,

v.

UNKNOWN TRIERWEILER, et al.,

        Defendants.
_____/

Case No. 2:15-cv-141

Honorable Gordon J. Quist

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Anthony Lamont Moore, a Michigan state prisoner currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Grievance Coordinator Unknown Trierweiler, Warden Catherine Bauman, Deputy Warden Scott Sprader, and Inspector Lyle Rutter. Defendants were employed at the Alger Maximum Correctional Facility (LMF) during the pertinent time period.

Plaintiff alleges that from September 16, 2013, though December 16, 2013, while he was confined at LMF, he was on modified access to the grievance procedure. Plaintiff states that he had been placed on modified access while he was still confined at the Chippewa Correctional Facility by non-party prison officials. After his arrival at LMF, Plaintiff made numerous requests for grievance forms. Plaintiff states that he had a family member call LMF and the MDOC administration in Lansing regarding Plaintiff's requests for grievance forms. Plaintiff believes that this is the main reason that he received grievance forms on some of his requests. However, some of Plaintiff's requests were never answered by Defendant Trierweiler. Plaintiff subsequently sent a letter to Defendant Bauman, but received no reply. Plaintiff claims that Defendant Trierweiler continuously refused to give him grievance forms and rejected his grievances in violation of policy. Plaintiff also states that Defendant Bauman failed to take any action to correct Defendant Trierweiler's behavior. Instead, Defendant Bauman gave Plaintiff's letter to Defendant Trierweiler, who reminded Plaintiff to follow policy when requesting grievance forms and not to involve his mother or the Inspector.

Plaintiff alleges that Defendant Sprader was a reviewer on some of the rejected grievances and failed to correct the rejections. Plaintiff states that he submitted a grievance on Defendants Trierweiler and Sprader, which came up missing "by the hands of Defendant Trierweiler." Plaintiff never received a response to his step III grievance appeal, which he submitted to legal affairs. Plaintiff believes that this grievance, as well as others, were improperly interfered with by Defendant Trierweiler.

Plaintiff alleges that Defendant Trierweiler continued to repeatedly violate the grievance procedure as it pertained to Plaintiff by improperly rejecting grievances, denying grievance requests, and by preventing Plaintiff from mailing out step III grievances. Plaintiff alleges that Defendant Rutter demonstrated bias when he responded to Plaintiff's grievances on Defendant

Trierweiler because he always believed his co-worker's version of events. Plaintiff also claims that Defendants Rutter and Bauman failed to respond to his letters of complaint.

Plaintiff claims that Defendants' conduct in interfering with his use of the grievance procedure violates his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff also asserts that Defendants' conduct violated his right of access to the courts. However, Plaintiff' right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*,

*Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable access to courts claim.

Plaintiff claims that Defendants Bauman and Rutter violated the Eighth Amendment by failing to act in order take corrective action against Defendant Trierweiler. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff's allegations do not show that he faced such a risk to his health or safety. Therefore, his Eighth Amendment claims are properly dismissed.

Plaintiff alleges that Defendant Trierweiler's conduct in interfering with his ability to file grievances was motivated by a desire to retaliate against him for his use of the grievance procedure. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, the Court notes that the Sixth Circuit has repeatedly held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

In *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001), the court stated:

> Kennedy's claim that placement on modified access violated his First Amendment right of access to the courts is likewise without merit. 42 U.S.C. § 1997e(a) requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court. If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his "available" administrative remedies as required by § 1997e(a). Consequently, Kennedy's placement on modified access cannot prevent him from filing claims in federal court. Accordingly, Kennedy's access to courts claims were properly dismissed.
>
> Kennedy failed to state a retaliation claim because no adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct" was taken against him. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999). Placement on modified access to the grievance procedure does not constitute such an action. Placement on modified access did not deprive Kennedy of the ability to file civil rights actions in federal court. Kennedy's placement on modified access to the grievance procedure merely enabled prison officials to screen Kennedy's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. See Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP). Moreover, Kennedy was not deterred from continuing to engage in the protected conduct because he continued to attempt to file grievances.

*Id.*

In addition, in *Corsetti v. McGinnis*, No. 00-1409, 2001 WL 1298830, at *2 (6th Cir. Aug. 7, 2001), the court noted:

> Nor can Corsetti show a First Amendment violation based upon either his placement on modified grievance access or the reading of his legal mail and legal materials. Modified access to the grievance process does not deny Corsetti the right or ability to seek redress for meritorious grievances. Rather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance. See Hartsfield v. Mayer, No. 95-1411, 76 F.3d 378 (table), 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (unpublished). Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or "hindered [his] efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Finally, Corsetti failed to establish the elements of his retaliation claims because either the acts that he alleged the defendants committed would not deter a person of ordinary firmness or he produced no

> evidence that the defendants were motivated to act against him because of his grievances or prior lawsuits. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

*Id.*

As noted above, Plaintiff claims that Defendant Trierweiler interfered with his ability to file grievances pursuant to MDOC policy. However, as noted above, 42 U.S.C. § 1997e(a) only requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court. Once Plaintiff attempted to file a grievance and was prevented from doing so through no fault of his own, he was free to file suit in this court. Defendant Trierweiler's conduct did not deprive Plaintiff of the ability to file suit in federal court. Therefore, for the same reasons that placement on modified access does not constitute an adverse action for purposes of a retaliation claim, Defendant Trierweiler's alleged misconduct does not constitute such an adverse action. Therefore, Plaintiff's retaliation claim is properly dismissed.

Plaintiff claims that Defendants conspired to violate his First and Fourteenth Amendment rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one);

*Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Initially, the Court notes that because Plaintiff has failed to show that any of the Defendants violated his rights under the United States Constitution, he cannot show that they engaged in a conspiracy in violation of Section 1983. Moreover, Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that Defendants have made decisions which adversely affect him in relation to his numerous grievances. As noted by the Supreme Court, allegations which do not contain "enough factual matter (taken as true) to suggest that an agreement was made" are not sufficient to support a conspiracy claim *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that Defendants' conduct was unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Plaintiff also claims that Defendants violated his rights under state law. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2

(6th Cir. June 18, 1998). Plaintiff's state law claims will be dismissed without prejudice to his ability to pursue those claims in state court.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 30, 2015                   /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE